Good morning, Your Honor. John Ballas on behalf of Erwin Cardenas. I'm intending to reserve two minutes for rebuttal. Okay. Our appeal raises a number of jury instruction claims and then a Sixth Amendment sentencing claim. I think the jury instruction claims are adequately covered by the briefs, and I'm intending to focus on the Sixth Amendment sentencing claim subject to any questions by the Court. With respect, our main claim is that Mr. Cardenas was denied his Sixth Amendment right to a jury trial where the State court imposed an upper-term, four-year sentence on a stalking count. This has been found to be error by the Supreme Court by Blakely and Cunningham, and this Court has already determined in Butler v. Curry that it's a violation of clearly established law, the Blakely decision, where the Petitioner was on. His conviction was not yet final at the time of Blakely, like Mr. Cardenas. The government has essentially conceded error in this case, but has argued that any error was not harmless. And the error to the extent that it actually caused something adverse, as I understand it, bumps that sentence up from three to four years? Yes. And I've spoken to some State court practitioners who advised me that on a life without the possibility of parole, you are eligible for parole in seven years, but you first have to serve the entire determinate sentencing part, and then they add seven years,  The sentence stands now, life with the possibility of parole plus nine years. He would be eligible for parole in 16 years. He was arrested in 2003, so he's been in custody about 11 years. The practical effect, then, would make him eligible for parole one year earlier. Okay. Got it. And so the appropriate standard here is the Brecht standard. Whether the error caused a substantial and injurious effect on the sentence, and the Court has said that the error is not harmless, that the reviewing court is in great doubt as to whether or not the jury would have found the relevant aggravating factors beyond a reasonable doubt. In this case, the sentencing judge found as an aggravating factor to impose the upper term the fact that the stalking count involved threats of great bodily injury and was disclosed a high degree of cruelty, viciousness, and callousness. Can you remind me, just sketch out briefly the facts that underlie the stalking account, the stalking count? Well, see, that's what's a little bit unclear, and I think why the Court cannot say that the error is harmless is that the actual stalking count was charged as a, if you read the information, on the same date as the assault. It wasn't necessarily, when I first thought about it, I thought it was like a prior stalking incident. Right. But they're all at least alleged to have occurred in the information on December 22nd, where there was a prior restraining order, and there was a prior incident where there was evidence that came out at trial on December 9th, about two to three weeks earlier, where Mr. Cardenas, in violation of the restraining order, went to see his ex-wife, the victim. So the Court did not exactly make clear of what conduct it was considering in making this finding. But it did say that the stalking conduct was separate from the assault attempted murder conduct, and it had to make that kind of finding in order to impose a consecutive sentence. Right. No, no. I mean, I think you would concede that if this enhancement had been attached to the attempted murder. I'd have a much stronger argument. Yeah. A weaker argument. You would be out of luck, because I think that was a pretty horrific crime. But that's what I was trying to just tell me. What did he do to be guilty of the stalking offense? What was the – what did he do? Well, so there was an incident on December 9th where he went to the house. He was hiding behind a – hiding in the garage. And when the ex-wife saw him, she went in the car, locked the car door, locked the car doors, and until he left, or she thought he left, and then there was a situation where she testified that he rammed his car into her car. Okay. And it caused her to bump her head. And then – but it's unclear if the court was considering that as the stalking conduct or the stalking that occurred kind of in connection with the assault, arguably, because the information does charge that the stalking occurred on the same day as the assault conduct. And what I – the points I want to emphasize is that what I said was the court said that the stalking conduct was separate from the assault, but also that this Court and the California Supreme Court has said that these aggravating factors like this are a fairly subjective, vague standard. And this is a situation where he didn't necessarily, if it was going to be a trial by jury on the aggravating factor, present all the evidence and arguments he would have if he would have, as it was by – at the trial where it's not an issue, or even at sentencing. And this Court has emphasized that in Chioming, which reversed, found the error not to be harmless, and determined that the appropriate remedy was for a new sentencing hearing in the California courts pursuant to the new statute that's in effect and the Sandoval decision. And I will reserve the remaining of my time. Okay. Good morning, Your Honor. My name is David Andreldich, Deputy Attorney General for Respondent. I, too, believe the instructional issue is adequately briefed, barring any questions from the Court. And as conceded in the brief, Mr. Cardenas, there was a Sixth Amendment violation by the Court in that it made the findings without – rather than submitting to a jury. To be clear, our argument wasn't simply that it was prejudice – there was a lack of prejudice. We believe that to be so, but it was, first, that he has weighed the issue because he didn't present it in his opening brief. There is the response that he made to our argument was that he has no duty to argue prejudice in the opening brief. He can wait until we file an answering brief. Well, that's just not true, for example, given that we could have filed no brief and the only forfeiture would have been a waiver of oral argument. His duty in the opening – But this is an argument in terms of whether he's waived it in this Court. Yes. Okay. Assume for the moment, for purposes of your argument, that he's not waived it. Well, then we turn to the question of whether or not we have a State court decision on the issue of prejudice. He argues that the last recent decision was the court of appeal on direct appeal. That's not really sensible for the reasons we pointed out in the brief. The superior court did not simply resolve a Sixth Amendment counsel claim. It stated that it had before it a claim that the sentence itself was unlawful, noted that the court of appeal had rejected that on procedural grounds, and then also noted it had an IEC claim before it. In explaining why he could represent the claim, the court didn't cite to ineffectiveness cases. It cited to People v. Black, which was a case directly on the Sixth Amendment sentencing, and it cited to Cunningham, a pending case, which had directly to do with Sixth Amendment sentencing. So the idea that it only reached an IEC claim rather than passing on the merits of a of the Cunningham claim itself does not make sense. And since the court – since he – But we have in front of us a concession from you that there's a Sixth Amendment violation. Yes. The question is prejudice. Once we reach the merits of the Sixth Amendment claim, the only issue in front of us is prejudice, correct? It is prejudice, but it's not direct, Your Honor, because direct – sorry. The Supreme Court and this Court have noted that the question whether the State Court reasonably applied Chapman is subsumed in the Brecht analysis this Court would apply. The problem is on habeas review, the State Court had no duty to apply Chapman. The Supreme Court has said that Chapman's standard for evaluating constitutional error applies on direct review. Well, he didn't present his claim on – he didn't get a resolution of his claim on direct review from the California Supreme Court. So the Supreme Court hasn't explained exactly what standard of harmlessness does apply when a State court evaluates a constitutional claim for harmlessness. At most, it might have to apply Brecht itself. But then this Court wouldn't apply Brecht de novo. This Court would apply whether the State court reasonably applied Brecht. I don't know exactly what they applied. You know, I think we've got case law in a fairly recent published opinion written by Judge Reinhart that says if we're talking about – once error has been established and we're talking about prejudice, that we get to decide Brecht, applying Brecht, rather than giving some form of deference to the State court's decision under Brecht. Am I misunderstanding our law? That is, I would state that I believe more precisely to say that that applies when the Federal court is – the epic question would have been whether the State court properly applied Chapman, not, for example, if the State court had properly applied Brecht itself, because then you would be giving zero deference, which is required by the Supreme Court. So you must apply deference to the harmless analysis. In the context where the State court was required to apply Chapman, it has been found that unreasonable application of Chapman is subsumed in the Brecht analysis. Kennedy. I'm not sure I read our case law the same way you do, but maybe I'll leave that open for the time being in terms of what the standard for harmlessness is. Can we go to harmlessness itself? That is to say, why do you say that it's harmless? Well, let me address first the idea that more arguments would have been presented I think if there were additional arguments he presented, you'd have them in front of you. The best argument he had to present at trial was that this was an accident. There's nothing he would have presented more compelling than the idea that he didn't intend it at all. So there was no argument that was missing that you could say, well, we just can't know what would have happened at the trial had this been presented to the jury. And I guess I thought that I'm not – you've gotten completely confused. I thought the issue on prejudice was relatively straightforward. We just look at the conduct that formed the basis for the stalking count, and we ask, well, is it – are we fairly certain that a jury on those same facts would have found – I can't remember the exact language of the enhancement. But isn't that all we're trying to figure out? Well, to be clear, I was trying to address the point made in the reply brief, Your Honor, that you really couldn't know because you didn't know what arguments might have been made at trial. So I wanted to put that to rest. The stalking – stalking in California is not a one-time factual thing. It's a continuing offense. So even though you might say it culminated on the December date that was charging information, that's not the entire range of conduct that goes into stalking. So you have prior occasions where he's calling repeatedly. We do have a threat of violence in the form we have an actual thing of violence in that he assaulted her with his car. So I don't – I cannot see how any jury, for example, would doubt that he assaulted her when he smashed his car into hers. The – he admitted hundreds of calls, I believe. So there was an ongoing campaign. He testified, I believe it was pointed out in the oral argument by – in the sentencing argument by the prosecutor that he was callous to the point where he didn't even bother reading the restraining order. So we have callousness, we have violence, we have an ongoing pattern. There was no doubt that the family indeed did have to use their alarm system. They were essentially captive in their own homes. So the facts laid out by the court for its finding really aren't disputable, even apart from the stabbing on the final date. So because there is no – because the right to a jury trial is to find the facts, not to reach the legal conclusion of propriety of a higher sentence, and there's no – there's no argument as to why the jury wouldn't have found these same facts. Indeed, even the reply brief. There's no actual argument of the evidence to explain why a doubt would obtain. There's just sort of a vague sense of, no, just send it back. So help me out. What's the standard, the legal standard, for applying the stalking enhancement? What's the language? What are the elements?  For the stalking enhancement. The elements are spelled out in the excerpt of the record at page – excerpt of the record 81 to 82. And while there's a preamble on 81 spilling over to 82, in the final analysis at the bottom of page 82, you must find the person willfully, maliciously, and repeatedly followed or harassed another person. The person made a credible threat. They did so with the intent to cause the other person reasonable fear. And the court, and because he's under the aggravated one where you actually do it in violation of a court order, there's the additional element of additional order, and the order was in effect at the time. So it doesn't require any actual violence. But your case has violence. Yes, which is what makes it aggravated, Your Honor. Okay. Thank you, Your Honor. Just two points I'd like to make. The first is that the aggravating factor here, a high degree of cruelty, viciousness, and callousness, is a – just by its term seems to be significantly more than stalking or even assault. And there's really no evidence to show conclusively that a jury would necessarily make that finding. And my second point in response to Judge Fletcher's on the general standard, I think that Judge Reinhardt opinion that you referenced, I think, does correctly state the law. It's IA-Levy-Wong, but I did want to mention that there is a cert petition pending and it is set for conference. Yeah. I know. But I think the same – I think that that standard, the Breck standard, follows from the Supreme Court's decision in Pleyer v. Fry and other decisions of this Court. Thank you. Okay. Thanks very much. Thank both sides for their arguments. Cardenas v. Sisto now submitted for decision.
judges: Duffy, Fletcher, Watford